Argued and submitted November 13, 2002, judgment modified in part; otherwise
affirmed March 6, 2003

## In the Matter of the Marriage of

### Suzanne Marie ROPPE,
*Respondent,*

*and*

### Randall Albert ROPPE,
*Appellant.*

### 01C-31862; A116470

64 P3d 1145

Russell Lipetzky argued the cause and filed the brief for appellant.

Tim Quenelle argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Husband appeals from a dissolution judgment that, in relevant part, awarded wife $1,000 a month in indefinite spousal maintenance support. He contends that, because wife is young, healthy, and capable of working full time, the court erred in awarding her indefinite support. On *de novo* review, we modify the trial court's judgment.

Husband and wife married in 1983. At the time of the dissolution hearing, wife was 39 years old and husband was 41 years old. During most of the marriage, husband worked as a salesman. His base salary is $1,500 per month, and the rest of his income comes from commissions. The trial court found that husband's gross monthly income is $4,600 a month. Wife has a high school education and, for the past 13 years, has worked as a cake decorator at a Fred Meyer store. She earns $13 an hour and works 24 hours a week. Husband and wife agreed that she would work part time and stay home the rest of the time with their two children.[1] As a result of working part time, wife has not gained any seniority in her job.

At the time of the hearing, no additional hours were available at wife's store, and there have been no openings for cake decorators at other Fred Meyer stores.[2] Although wife was precluded from decorating cakes for a competitor, she acknowledged that she could supplement her current income by working part time in another field. However, she had not checked into other part-time work outside of cake decorating because it was not within her "trained skill." For wife to obtain a different skill, she would have to go back to school.

The trial court noted that wife "seem[ed] real resistant to the idea of taking a job and doing anything other than decorating cakes." The court asked wife whether it seemed sensible for her to take another part-time job in a different

---

[1] The parties' two children were 8 and 14 at the time of the dissolution hearing.

[2] According to wife's employer, wife could work part time elsewhere as long as that work was not in direct competition with Fred Meyer. Similarly, if work opened up at another Fred Meyer store, wife could work part time there as well.

field, even if that meant earning less than what she was making as a cake decorator. Wife answered, "It's just that I have worked for Fred Meyer's for 14 years, you know, and I would like the hours there." The trial court found that wife's potential gross income is $1,690 per month, which consists of the wages she earns working 24 hours a week as a cake decorator combined with the amount she could earn if she worked a minimum wage job an additional 16 hours a week.

After considering the evidence, the trial court divided the parties' property roughly equally between them, awarded wife custody of their two children, and ordered husband to pay $637, then $678 a month in child support. It also awarded wife spousal maintenance support, in the amount of $1,200 a month until the parties' home was sold, but not to exceed two years, and then $1,000 a month indefinitely. *See* ORS 107.105(1)(d)(C).[3]

On appeal, husband contends that, although $1,000 per month for five years would be a reasonable sum for spousal support, an award of maintenance support after that time is inappropriate because, by the end of the five-year period, wife can be employed full time and can be self-supporting. As we understand husband's argument, he contends that the trial court should have awarded spousal maintenance support for a "specified [rather than] an indefinite period." ORS 107.105(1)(d)(C).[4] In response, wife contends that, given the

---

[3] As amended in 1999, ORS 107.105(1)(d) identifies three categories of spousal support and sets out factors, as part of each category, to be considered in awarding spousal support. ORS 107.105(1)(d). It also provides that, "[i]n making the spousal support order, the court shall designate one or more categories of spousal support and shall make findings of the relevant factors in the decision." *Id.* In this case, the trial court orally described the two factors that it found relevant. Its judgment, however, recited the factors set out in ORS 107.105(1)(d)(C) without explaining why those factors, either singly or in combination, justified its award. One purpose that the statutorily required findings serve is to provide guidance for later courts in deciding whether modification or termination of spousal support should be allowed. Merely reciting the list of factors set out in ORS 107.105(1)(d)(c) does not advance that statutory purpose. *See Schoch v. Leupold & Stevens*, 162 Or App 242, 250, 987 P2d 13 (1999).

[4] Although husband refers to "transitional support" once in his brief, we do not understand him to argue that support is "needed for [wife] to attain education and training necessary to allow [her] to prepare for reentry into the job market or for advancement therein." *See* ORS 107.105(1)(d)(A) (stating the purpose of transitional support). Rather, we understand him to argue that a specified period of maintenance support is needed so that wife can become financially independent and self-supporting. *See Ley and Ley*, 133 Or App 138, 142, 890 P2d 440 (1995).

length of the marriage, her lack of education and work experience, and the parties' relative earning capacities, the trial court correctly awarded her indefinite spousal maintenance support.

■ In determining the amount and duration of spousal support, ORS 107.105(1)(d)(C) provides that we may consider, among other things, the duration of the marriage, the age and health of the parties, the standard of living established during the marriage, the relative income and earning capacities of the parties, the parties' training, employment skills and work experience, and "[a]ny other factors the court deems just and equitable." ORS 107.105(1)(d)(C). The purpose of the award is "not to eliminate all disparities in the parties' incomes or to enable one party to look indefinitely to the other for support, if self-support at a reasonable level is or will be possible." *See Ley and Ley*, 133 Or App 138, 141, 890 P2d 440 (1995).

In its oral remarks, the trial court explained that indefinite spousal maintenance support was appropriate for two related but separate reasons. First, the court stated that spousal support is "going to be required to maintain [wife] in the fashion that's anywhere close to what she's enjoyed during the marriage for the last six or eight years or so." Second, although the court recognized that wife could earn more money than she was earning at the time of the hearing, it concluded that "her earning capacity is substantially less than [husband's] and is likely to continue to be substantially less than his for the foreseeable future."

■ In reviewing the trial court's spousal support award, we begin with the amount and then turn to the duration. The trial court ordered husband to pay wife $1,200 a month in spousal support for two years or until the house is sold, whichever period is shorter, and, after that, to pay her $1,000 a month. Husband does not dispute that he should pay wife $1,000 a month for five years but asks that we modify his spousal support obligation after that five-year period.[5] We

---

[5] We do not understand husband to argue that the trial court erred in setting the amount of spousal support at $1,200 a month for two years or until the house was sold. Rather, his argument focuses on the fact that the trial court required him to pay $1,000 a month for more than five years.

agree with the trial court that it is appropriate for husband to pay a higher amount initially. The parties had been married for 18 years. At the time of the hearing, wife's job skills were limited and working part time had prevented her from acquiring seniority at her job. A five-year period gives wife the opportunity to acquire a full-time job that will provide her with a more reasonable monthly income, either in her present field or in a different one.

We disagree, however, with the trial court that wife should continue to receive $1,000 a month after that five-year period. Wife was 39 years old at the time of the hearing. She was in good health, and nothing prevented her from acquiring full-time work in a related or different field that would allow her to earn a higher monthly income than she was earning at the time of the dissolution hearing. In such circumstances, we have stepped down support to encourage the dependent spouse to become more financially independent and self-supporting. *See McLennan and McLennan*, 140 Or App 379, 382, 914 P2d 711 (1996); *Ley*, 133 Or at 142; *Madden and Madden*, 114 Or App 319, 325-26, 836 P2d 1349 (1992). We agree with husband that five years is a reasonable period to permit wife to find new or additional work. The question that remains is whether spousal support should be terminated after five years or merely reduced.

In resolving that issue, the case law has focused on the duration of the marriage, wife's age and health, the parties' relative income and earning capacities, their financial needs and resources, and the prospect that wife can become self-supporting. *See* ORS 107.105(1)(d)(C); *Grove and Grove*, 280 Or 341, 358-59, 571 P2d 477, *modified on recons*, 280 Or 769, 572 P2d 1320 (1977) (providing for stepped down but indefinite maintenance support for dependent spouse in her mid-forties after a 23-year marriage); *McLennan*, 140 Or App at 384 (providing for a specified period of spousal support where 38-year-old wife had "good prospects for becoming self-supporting at a level that is not overly disproportionate to the [parties' standard of living]"); *Maxwell and Maxwell*, 128 Or App 565, 570-71, 876 P2d 811 (1994) (in light of the parties' disparate earning capacities, providing for stepped down but indefinite support for 47-year-old wife after a 15-year marriage). As the trial court explained, the disparity between the

parties' incomes was substantial and was likely to remain so. Even if wife found full-time employment, the record does not suggest that she can improve her earning capacity substantially. Although her age and health cut against an indefinite award of spousal support, her limited prospects reveal that some continued support is necessary to allow her to achieve a lifestyle that is not overly disproportionate to the one that she enjoyed during her marriage. In these circumstances, we conclude that the more equitable course is to reduce husband's spousal support obligation to $500 a month but continue it indefinitely. We accordingly modify the judgment to provide that, after the first five years, husband's spousal support obligation will be reduced to $500 a month.

Judgment modified to reduce indefinite spousal support, after the first five years, to $500 per month; otherwise affirmed.