On petitions for attorney fees filed October 19 and November 18, 1999, plaintiffs awarded attorney fees February 24, 2000

Stephen KAHN
and Christine Kahn,
*Respondents on Review,*

*v.*

Christopher CANFIELD,
Janet Lee Tuininga, Nicholas M. Cutting,
Canfield Associates, Oreg. Ltd.,
Cerro Gordo Forestry Cooperative, Inc.,
Town Forum, Inc., Cerro Gordo Silviculture, L.L.C,
and Cerro Gordo Cooperative, Inc.,
*Petitioners on Review,*

*and*

CERRO GORDO CONSTRUCTION COMPANY, INC.,
Cerro Gordo Water Service Cooperative, Inc.,
and John Does 1-25,
*Defendants.*

(CC 16-95-06314; CA A95887; SC S46576)

998 P2d 651

David A. Bahr of Bahr & Stotter Law Offices, Eugene, filed the petitions for attorney fees for respondents.

George W. Kelly, Eugene, filed the objections for respondents on review.

GILLETTE, J.

**GILLETTE, J.**

Petitioners (hereafter referred to by their trial role as plaintiffs), who prevailed against respondents (hereafter defendants) both at trial and in the Court of Appeals in an underlying action for fraud, breach of contract, ORICO, and other statutory violations, seek $15,065.89[1] in attorney fees for their efforts in filing a response to defendants' petition for review by this court. Plaintiffs claim entitlement to those fees under three statutes: ORS 166.725(7)(a) (1993) (providing an action and authorizing an award of "reasonably incurred" attorney fees to any person injured by a violation of Oregon's racketeering statute);[2] ORS 20.096 (1993) (providing for reasonable attorney fees to the prevailing party in a contract action when the underlying contract provides for attorney fees for enforcement); and ORS 648.135(2) (providing for attorney fees "reasonably incurred" in actions involving a violation of the statutory prohibition against conducting business under an unregistered name). We conclude that plaintiffs are entitled to an award of attorney fees, but that the amount that they seek is excessive. We determine that $11,651.15 in attorney fees were "reasonably incurred" and that plaintiffs are entitled to an award in that amount.

Plaintiffs retained lawyers to represent them, on a contingent fee basis, in complex litigation arising out of a real estate transaction. The case went to trial, and the jury returned a 31-page special verdict in plaintiffs' favor. Defendants appealed the ensuing judgment, but the Court of Appeals affirmed without issuing an opinion. *Kahn v. Canfield*, 158 Or App 144, 972 P2d 1233 (1999). Defendants

---

[1] The figure is the total of the amounts requested by an original petition and a supplementary petition. The request in the later petition—for $1,372.73—is disputed, but we do not find the arguments respecting it to be well taken. Thus, the discussion that follows relates only to plaintiffs' original request for an award of $13,693.16.

[2] ORS 166.725(7)(a) (1993) is part of the 1993 version of Oregon's racketeering statute (ORICO). It provided:

"Any person who is injured by reason of any violation of the provisions of ORS 166.720 shall have a cause of action for three-fold the actual damages sustained and, when appropriate, punitive damages. Such person shall also recover attorney fees in the trial and appellate courts and costs of investigation and litigation, reasonably incurred."

then filed a petition for review in this court. Plaintiffs responded by filing a 35-page response urging this court to deny review. We denied review on September 21, 1999. *Kahn v. Canfield*, 329 Or 357, 994 P2d 124 (1999). Plaintiffs now request an award of attorney fees for their lawyers' efforts in responding to defendants' petition in this court.[3]

In support of their request, plaintiffs have submitted a statement of facts, verified by one of their lawyers, that purports to demonstrate the reasonableness of the requested amount. The statement asserts that five lawyers, all members of the same Eugene law firm, worked a total of 107.62 hours on responding to defendants' petition for review.[4] The statement sets out billing rates, ranging from $65 to $150 per hour for each of the five lawyers. The statement also claims small amounts for postage, photocopies, and telephone calls.

Plaintiffs' lawyers assert, in the verified statement, that the hours, rates, and resulting overall fee request are reasonable in light of (1) the complexity and difficulty of the litigation; (2) the skill and experience required to litigate the case and the level and skill and experience that they, in fact, brought to the case; (3) the fact that they accepted the case under a contingent fee arrangement; and (4) plaintiffs' awareness that their acceptance of the case would preclude other employment opportunities. The lawyers note that they have been awarded fees based on rates that are the same as or similar to the ones requested in other litigation (including the appeal of the present case in the Court of Appeals) and that the requested rates are consistent with those of lawyers with comparable experience in their community.

Defendants do not appear to dispute that plaintiffs are entitled to reasonable attorney fees under the statutes cited. As we noted in a companion case, *Dockins v. State Farm Ins. Co.*, 330 Or 1, 997 P2d 859 (2000), when an attorney fees petition comports with the requirements of ORAP

---

[3] Plaintiffs already have obtained attorney fee awards for the work of their lawyers at trial and in the Court of Appeals.

[4] The statement also provides detailed information, culled from the lawyers' individual timesheets, showing the hours expended on the matter on a daily basis and the services provided.

13.10(5), as this one does, our inquiry into the request generally will be limited to the objections that are filed by the party opposing the petition. Here, defendants raise a single objection to plaintiffs' attorney fees request—that the total amount requested is excessive in view of the fact that "most" of the document produced in response to defendants' petition for review "is either direct quotation from, or nearly direct quotation from, [plaintiffs'] brief in the [C]ourt of [A]ppeals." Defendants argue that, despite the hours and services claimed, plaintiffs' lawyers produced little *original* work in preparing defendants' response to plaintiffs' petition for review and, therefore, should not receive the sum requested.[5]

In response to that objection, plaintiffs assert that: (1) the duplications noted by defendants were appropriate and justified as a time-saving device; (2) on the whole, the document filed in this court was a "unique and individual work product" that required a significant period of time to produce; and (3) because defendants' objection is aimed broadly at the total amount of attorney fees requested, rather than at specific time expenditures, it is too general to merit serious consideration.

■  Plaintiffs' last point takes an unjustifiably narrow view of defendants' objection. Although plaintiffs are correct that defendants have not singled out specific items from the lawyers' time reports as false or unreasonable, such specificity not always is required, and even may not make sense, in the context of the kind of objection involved in this case. Fairly read, the objection argues that the *overall time* that plaintiffs' lawyers claim for researching and drafting the document at issue is unreasonable, because a large portion of the document was drawn verbatim from an earlier brief. Depending upon the amount of time claimed, that objection may be valid: Although 107 hours might not raise questions in the production of a 35-page work product that is researched and written "from scratch" in the context of a complex case, the same cannot be said for a 35-page document that does little

---

[5] Defendants do not suggest an amount that they believe would be reasonable for the services at issue.

more than repeat arguments that were researched thoroughly and developed at an earlier stage in the proceedings and, in this case, already have been compensated.

The question remains, however, whether the work product at issue here is, as defendants argue, nothing more than a repeat of earlier work. Plaintiffs contend that it is not—that, although parts of the Court of Appeals' brief were incorporated in the document, it nevertheless represents a unique work product, the vast majority of which was researched and drafted for this court.

We have reviewed plaintiffs' Court of Appeals brief and their response to defendants' petition for review in light of defendants' argument. Our own comparison leaves us somewhere in the middle. The response draws heavily from plaintiffs' Court of Appeals brief, but it also contains a significant amount of "new" material. Ultimately, however, there is enough duplication between plaintiffs' response and their Court of Appeals brief on the merits that we cannot accept the entire time expenditure claimed by plaintiffs' lawyers as reasonable. We are persuaded that, because significant parts of the arguments in the document already had been developed and drafted for plaintiffs' brief in the Court of Appeals, plaintiffs' lawyers should have been able to produce their response to defendants' petition for review in, at most, 80 hours. We reduce plaintiffs' attorney fees request accordingly.

Defendants have confined themselves to the single objection that we have discussed. We confine our inquiry into the reasonableness of plaintiffs' request accordingly. *See Dockins*, 330 Or at 9 (in ordinary case, court will limit its review of an attorney fees request to the grounds asserted in objections filed by party opposing fee request).

Plaintiffs are awarded $11,651.15[6] as reasonable attorney fees on review.

---

[6] That amount represents the fraction 80/107.62, multiplied by the amount requested as attorney fees by plaintiffs in their original petition. That result is $10,163.90. To that, we have added the amount requested in plaintiffs' supplemental petition. In addition, we approve the incidental expenses that plaintiffs claim and to which defendants have raised no separate objection.